May it please the Court, Deborah Bull appearing for Appellant Jamie Mitchell. And this case has been here before. We're back again on a renewed sanctions issue. The choice before the Court is whether to insist on strict compliance with Rule 11 requirements for sanctions or to adopt the city's approach that close is good enough. And I submit that close is good enough in horseshoes and hand grenades, but is not good enough in a Rule 11 context, where strict compliance is required by prior case law. And in this case, the district court agreed to do that. One of the issues, a major issue, is whether the attorney should pay the fees or the client should pay the fees, or the client would be responsible for part of the fees, at least. That is an issue in the case, Your Honor, yes. Do you represent, are you a member of the firm that? Yes, I am, Your Honor. And if the client has to pay at least a part of the fees, the firm would not have to pay that part, the joint and several liability? I'm sorry, I didn't quite hear your question. Yeah. Does this – would the firm have to pay less if the client had to pay part? Under rules of joint and several liability, both sides are responsible for 100 percent. It's not an allocated responsibility. Right. So there was an error here in sanctioning Mitchell and saying that he was responsible for fees. That only acts to the benefit of Mitchell and not to the benefit of the firm. Well, if Mitchell is held responsible, and the judgment should be levied against either or both of them. Yes, Your Honor. Then in that case, under normal rules, the city could pursue enforcement of its judgment equally against both Mitchell and his attorneys, and both would be liable. Yes. And if they enforced it against Mitchell, that would reduce the liability of the firm? Yes, Your Honor, it would. Is there any question of conflict of interest here because the money that they might collect from Mitchell would be – would benefit your firm? Actually, Your Honor, by adopting this position, I believe it only assists Mitchell. If we prevailed on this position and nothing else, Mitchell could end up being relieved of responsibility, but the firm would still be responsible. So winning on this issue harms the firm and benefits Mitchell, but nonetheless, I think it's the right position to pursue for the benefit of our client. Under Rule 11, the way the statute reads, I do not believe Mitchell should have been sanctioned for anything other than potentially the allegation as the subclaim in the 13th cause of action that related to Arbitrator Kelly, as I see that as an evidentiary fact and not a legal argument. Are you arguing that Mitchell should not be responsible if the firm is responsible? I'm arguing that under Rule 11, Mitchell should not be responsible for sanctions. He should not have been sanctioned, and it was an error and an abuse of discretion to sanction him, and that's an error. I am not arguing that the district court did not have the authority to sanction the firm, although I do believe it was an abuse of discretion for her to do so on other grounds. Are you arguing that under 11b-2, the errors are all legal errors for which he can't be sanctioned? I am arguing that under 11b-2, the sanctions for causes of action 1, 5, 8, 11, and 12 were legal, and for 13, it was evidentiary. And you don't believe there's any conflict in your representing Mitchell and being from the firm at this stage of the proceedings? I believe that the representation only goes to the benefit of Mitchell, and we are putting his interests above the firm's interest in this case. All right. All right. Thank you, Your Honor. So the district court first sanctioned Mitchell only for one subclaim of 5 in the 13th cause of action, out of 13 causes of action, and that went up on appeal to this court, and this court held that there was an abuse of discretion, reversed, and remanded it. And the district court's response to that was to find five additional bases for sanctions and to increase the sanctioned amount by 50 percent from 31,600 to 46,800. That is, I submit, punitive, and it is not in accord with the mandate of Rule 11 that if sanctions are going to be awarded as attorney's fees rather than the lesser alternatives which are authorized, then it has to be limited to the sanctions that are necessary for effective deterrence. It's not punitive. It's intended to give litigants an opportunity to voluntarily comply, to voluntarily adjust what they're doing. And having this massive sanction at the very end of the case, when all causes of action had been remaining, had been remanded to State court, there's nothing left to do, it was punitive, as in the matter of Yaghman. It was not an effective deterrence, and it wasn't proportionate. Kagan I just want to give you a fair opportunity to respond to this. I can't think of a case where I've seen as many warnings, as many shots across the bow. The earlier complaints weren't just dismissed. The judge told them why. So this, your argument right now is striking me as really unpersuasive, frankly, and I just want to give you a chance to respond to that. Yes, Your Honor. The – in Mitchell I, the very first complaint that was filed, the court did dismiss Mitchell I, and the thrust of that was that you're at a too early a stage, go back, arbitrate, you've got some things to do, you've got presentation requirements, exhaustion requirements, do that, then come back. And Mitchell did. And when he came back and filed his first amended complaint post-arbitration, a properly noticed motion was filed by city, which met the safe harbor requirement, and Mitchell responded to it. And not only before – when he filed the first amended complaint, he had already adjusted based on what happened in Mitchell I. He did not simply refile the same complaint. He dropped certain causes of action. He recast some others. He came to the first amended complaint, and the judge denied sanctions and said, well, you know, 13, that 13th cause of action, that's troubling. That's particularly troubling, and I think you should have some more evidence. I'd like to see more before you go forward. And he responded to that. He didn't ignore the court's warning. He didn't just blithely redo it. He complied with the court's guidance by dismissing it, by not pursuing that cause of that subclaim any farther. And that's in accordance with public policy. That's what we expect. And the court, the district court, took that as an admission that he'd never had a basis to begin with. And that was speculation to assume that. Under the circumstances, there was no oral argument at that point. The court simply vacated and made a decision. But it could have been that Mitchell's attorney said, you know, hey, there were client confidentiality protections there, witness confidentiality, sorry, not client. And it is reasonable to have assumed that he didn't want the tail to wag the dog in this case, that this was only one subclaim out of a much larger complaint, that based on the Kelley declaration filed, it would have been a case of he said, she said. Mitchell had been denied discovery, so he didn't have additional evidence to present to bolster it. So not going ahead was reasonably following the court's guidance. It wasn't ignoring it. But Rule 11 requires that there be a good face at the outset when the complaint is filed. Absolutely, Your Honor. And I agree that Mitchell's attorney, by filing the complaint in the first place, made an affirmative representation that there was that good faith basis. And there's no – it was not established that there was not a good faith basis. Deciding down the road to drop it, his witness may have turned shaky on him and not wanted to go forward. He may have looked at the case progressing and said, okay, this isn't worth it. It's getting out of hand. Or I don't know if even if my witness will persuade the court in light of the Kelley declaration, and therefore, the sensible sane thing to do, reevaluating at this point, is to drop it. That doesn't mean, and there was no admission, that he never had a basis to begin with. But the rules, the cases, I understand that there were things that you could point to and that Citi has pointed to where there were certain warnings. But the cases have been clear that only a properly noticed motion, served but not filed in accordance with the safe harbor provision, is going to suffice. And the courts have said that, you know, the language of Rule 11 says there are other warnings that could happen. And Rule 11 shows that those other warnings are not enough. And for instance, even in the eighth cause of action in the First Amended complaint, the notice provided by Citi in its motion, its 2009 motion, said that the basis for sanctions was violation of the litigation privilege. When the court, the district court in 2012, came to decide on a sanction for Mitchell, at that point it said, well, the basis for that sanction is failure to abide by the court claims notice, not the litigation privilege. And that was clear back from Mitchell 1, the first order. So the court did not rely on the notice, the properly noticed motion in 2009. The other two motions were not the same motion refiled. They were later versions. They had additional arguments. They had additional causes of action. They didn't follow the rules for strict compliance. And the prior case law, particularly Barber v. Miller, Holgate v. Baldwin, teach us that there was not proper notice and that the sanctions are therefore an abuse of discretion. And if there are no further questions, I'd like to save the remaining time for rebuttal. Thank you, Your Honor. Thank you. May it please the Court, Constance Norton, on behalf of the City of Santa Rosa. There is no abuse of discretion here. The district court did precisely what this court asked her to do in remanding the case. It asked her to specifically look at the causes of actions, the counts that she found sanctionable, and to make a determination as to what conduct was sanctionable. Precisely, she did in fact that. She identified six separate causes of action in both the First Amendment complaint and Second Amendment complaint which she found sanctionable, and she awarded sanctions for those counts and only those counts. With respect to the newly raised argument as to whether or not Mr. Mitchell has personal liability, the City's position is that this argument has absolutely been waived, although the Ninth Circuit clearly has discretion to hear it. None of the circumstances in this case are present that would justify there's no miscarriage of justice. There's not purely an issue of law, as I'll get to in a moment, and there was no change in the law. As the Court appropriately noticed, this was Mr. Mitchell had ample opportunity to raise this issue and was confronted with this issue right from the very beginning, right from the motion that was served during the safe harbor period in which the City asked for joint and several liability in the terms of sanctions. That was not opposed. The City was ultimately act was forced to actually file that motion. The joint and several request was not opposed. The Court then gave Mr. Mitchell the opportunity after dismissal of the Second Amendment complaint to make objections to the actual award that the City requested. The concept of joint and several liability was not opposed. In the Court's order actually awarding sanctions, there was a provision that was entitled division of liability. That same provision exists both in the 2010 sanctions order as well as the 2012 order from which the order is being appealed at this time. It was clear from the language of that order that there was absolutely no attempt to raise this issue of not having joint and several liability. And indeed, the only issue that the Court addressed was ability to pay, because she felt that, pursuant to the existing case law, that she was required to address that. On the first appeal to this Court, he had the opportunity to raise the issue. He failed to do so. And the district court's docket demonstrates that not only did he move to dismiss the sanctions, but he also filed a separate opposition to the sanctions after the remand occurred, and he failed to raise the issue at that time. So given all of those opportunities, the City would submit that this issue was raised – excuse me, has been waived and not won. So what's your view of the merits of it, if we get past that? To the merits, Your Honor, the City's position is that these – that he was not sanctioned for advancing legal arguments. I think the record is quite clear that the reason that he was sanctioned was for refiling exact verbatim charges and or issues, and additionally, for filing what the Court found to be unsubstantiated factual allegations against Arbitrator Kelley. And so given that this is not – that he was not being charged with violations of Section 11B-2, then the – the prohibition against sanctioning him individually under – excuse me, under the – under the rule is inapplicable here. The Court expressly found that the refiling was the – was the sanctionable conduct. But all those actions were taken on behalf of Mitchell through his attorneys. He didn't file any pro se pleadings, did he? He didn't, Your Honor, but the First Amendment complaint was, in fact, verified. And it was that complaint in which the – all of the sanctionable conduct originally was found, although she – the Court gave him an opportunity in the – in the Second Amendment complaint to try to fix the 11th and 12th and 13th causes of action. He failed to do so. So she actually awarded sanctions for the 11th and 12th count in the Second Amendment complaint as opposed to the first. Kennedy, did the Court say under what provision it was awarding sanctions? She did not drill down to the precise section, Your Honor. She said 11B and 11C. She didn't say that it was one of – be one or two? She said – she did not. She said 11B and 11C. But I think if you look at the precise wording of the – Some of the wording is legally unfounded, Your Honor. That's true. I think she felt that she was compelled to give the legal analysis as to why she was dismissing the claims. And yet it's also quite clear from the language in the order from – for the – for the – excuse me, the 11th and 12th and all the claims other than 13th that she uses the word refile, refile, refile. This is absolutely a theme that she found upsetting and right from the very beginning. I mean, she said it in the – in the oral argument on the very first motion to dismiss, that she found that bringing these additional charge – these charges again, she found troubling. So she – she advised Mr. Mitchell right from the very, very beginning of the second action that this was troubling behavior to her, which is completely consistent with Yagman. She advised right in the very beginning, both in – in that – in the oral argument as well as in the order, that there was a possibility that – that he would be sanctioned. And it's disingenuous for Mr. Mitchell to argue that – that therefore the first, quote, unquote, notice that he had that he – there was a possibility that he was going to be sanctioned was in that February 2010 order. The public policy of the Rule 11 is that you have this safe harbor period, right? I mean, the legislative public policy as articulated by the – by the legislature is you – you serve but do not file your motion, which gives all of the – of the prescription of the conduct. I mean, it does not say that you have to set forth each and every cause of action or call it out by number. The – the – the admonition is to call out the conduct. And – and there's absolutely no question that the city's first sanctioned motion did absolutely that. But in any event, the – the public policy is articulated there, and – and you don't have to wait for the court to say, I'm thinking about sanctioning you, to have that constitute your very first notice that sanctions are coming, that there's – it was provided that the – the legislators provided that in Rule 11 you do this safe harbor period in advance of that so that the court doesn't have to get involved in that inquiry and waste the time and the money and et cetera. Do you think laypeople understand what safe harbor is in this context, or joint and several liability? Well, I don't think that the – I don't think that the safe harbor wording is – is relevant necessarily. It's really the act of receiving a unfiled motion, right? And it's – it – the admonition is you have to have your whole motion prepared, you serve it on opposing counsel, and as the advisory committee remarks indicate, the whole purpose for doing that is to – is to induce candor in the parties in order to – to have an opportunity to withdraw something that – that is not viable or can't, you know, can't be done. So it's – it was the fact of receiving this unfiled motion that should have alerted Mr. Mitchell and his counsel to the concept that – that – that this was sanctionable conduct and they better really think about whether or not they wanted to pursue it. With respect to the court's question about joint and several liability, I think if you – if you stopped somebody on the street and asked them to explain what several liability was, they would – you would not be able to get a good answer from any one of a hundred people you stopped. Well, I'm sure – I'm sure that's – I'm sure that's not the case. Right. So when you say that he understood the joint and several liability, that he was – meant in the way that we understand it, that's a bit of an overstatement probably. And I'm sorry. I didn't mean to overstate, Your Honor. My – my point is – is that they knew that it was being requested, and certainly he could have relied on counsel to explain to him legally what that meant. Do you mean he knew that sanctions were being requested, or do you think that sanctions were being requested jointly and separately, Your Honor? That was actually set – that was actually set forth in the very first unfiled motion. Right. But in those terms, sure. That's – that's the point of my question. I was trying to finish the – I'm sorry. That's all right. It's just that it's a little echoey and sometimes we talk over each other. But what I meant is that there's a distinction, I think, in Apportment 1, between whether this layperson was on notice that if sanctions were being requested – that part I think is not really contested, or maybe it is, but anyway – setting that aside, there's a different question about whether or not you think he was on notice that he could be held liable. I would need to look at the motion, Your Honor, but I do believe that there is some I don't want to – I don't know that for sure. Okay. Is it the City's position today that these two should be held jointly and separately liable? Yes, Your Honor. And to the extent, however, that the Court feels that the – number one, the issue hasn't been waived, and number two, that the positions that were being propounded were, in fact, legal positions, then the City's position would be, well, then alternatively, the attorney is on it for the entire thing. Okay. And so there's just one other wrinkle to that, and that is the opposing counsel argued that as to, I believe it's count 13? Yes. That perhaps there was a factual assertion there about the ex parte communications. Or he would have been the only one to have – I think that's her point, that Mitchell would have been the one that had that information. I'm not – She alluded to it, the need for an evidentiary hearing. Right. I'm not certain that only he had that information, although there is absolutely a speculative concept in the brief that says perhaps it was attorney-client privilege and information, perhaps he got it from a recalcitrant witness. But there's – but it's pure speculation. There's absolutely nothing. And there was no request, for example, below that the Court hold an evidentiary hearing or hold an in-camera review so that they would have an opportunity to demonstrate to the Court that, yes, in fact, there was a good faith basis for us making these factual allegations, and yet at this stage in the proceedings we're unable to reveal that in the context of a pleading. I'm not trying to belabor the point, but you did make a reference earlier to the fact that the complaint was verified. Yes. It seems just a little bit at odds with the other position that I think you've taken, which is that the lawyer under Rule 11 has to be willing to verify that he or she's got what it takes at the time the complaint is filed to prove up the allegations, has a good faith belief in the complaint. Hence my question about whether you think there's a different treatment that we should give to this cause of action number 13. I think the point about the First Amendment complaint being verified is simply that the verification required that and stated that Mr. Mitchell had read and understood and that the contents were true and correct. And so in that context, and the 13th cause of action was not the only cause of action that was quite factually specific. I appreciate that. And indeed, the 11th and 12th causes of action also, I believe, were dismissed on what ultimately were factual grounds for failure to appropriately file the tort claim. But the question really goes to whether the firm should be treated any differently as to that 13th cause of action. No. The firm's exposure is different. No, because Mr. Mitchell is represented by the same counsel at the arbitration where these alleged events took place. So there's been consistent representation throughout. I think it was in your brief that it was the first time there was a conflict of interest mentioned. Yes. We do believe that there is a conflict of interest for failure to actually raise this below. And it is absolutely – if, for example, the firm were to somehow dissolve, and Mr. Mitchell would be on the hook for the entire amount, or they – so that absolutely is an adverse argument to the client. And we – it was perhaps speculative on our part as to why it wasn't raised before, but it certainly was not. Right. But doesn't that excuse the waiver, if true? If your position is accurate that there's a conflict of interest below, and the conflict of interest prevented Mr. Mitchell from asserting a defense to joint and several liability, doesn't that mean it's a live issue for us? It doesn't – it didn't prevent them from asserting a defense. No, no. Well, how could Mr. Mitchell, on his own, argue to the court, raise the argument to the court? Well, the firm could have argued on his behalf this exact argument now, that he personally No, I don't understand that. But if there's a conflict of interest that prevented them from doing so, why isn't that a sufficient excuse to excuse the waiver on appeal? On – as to him personally? Yes, if your argument is true. I'm sorry, Your Honor. I don't have a good answer to that. I suppose the final issue is with respect to calculation, and the city's position is, obviously, that the court only looked at four very specific motions. She then took from that this – the individual causes of action that she found to be that was – that was, under the circumstances, the absolute best way that she could have made that calculation. Thank you, counsel. Thank you. Thank you, Your Honors. A couple of points that occurred to me. One, the city's counsel is contending that Mitchell had proper notice from the 2009 motion of all of this conduct, and city tends to allied or be very general about what conduct is at issue. But two of the causes of action out of the six that Mitchell is currently appealing today are the 11th and 12th causes of action from the Second Amendment complaint, and those were not raised at all in the 2009 motion. They were raised later on in a subsequent motion filed by the city which did not meet the safe harbor provision. So it is simply not accurate to say, well, Mitchell had notice of all of this. He didn't have notice under the safe harbor provision of the 11th and 12th causes of action, and as I argued earlier, he also didn't for the eighth cause of action, given that the court ultimately found it was sanctionable on an entirely different basis than the motion raised. Of what significance do you think it is that he assigned a verified complaint? I do not believe it makes a difference in this case that he signed a verified complaint because he was represented at all times by counsel. So I just don't see that it matters. And with respect, I want to make sure that Mitchell's position is correct. With respect to the 13th cause of action, when I stated that we believe that is a contend that is based on evidentiary facts, and therefore, the bar of 11b-2 would not apply, which says that you can't sanction a party if it's the party is represented and it's based on evidentiary facts. That does not excuse the firm. My argument is not, oh, it's okay for Mitchell to be liable for the 13th cause of action and the firm is off the hook. The firm, under Rule 11 rules, Mitchell was represented at all times. The sanction goes for all of the causes of action. I believe they're an abuse of discretion, but the firm is not trying to get out of its liability to Mitchell here. And as for waiver, the last time that this came before this Court, this wasn't an issue because the only sanction applied to Rule 2, the 13th cause of action, that was evidentiary, and so it just wasn't – it didn't come up. The last point that I'd like to make, with permission, because I see I'm very low on time, is that one of the major policy concerns of this is that Rule 11 has to be read in light of a concern that it will chill vigorous representation. In this case, Mitchell won on appeal before the Ninth District when he challenged the sanction previously. The consequence of that win was that the district court found five new bases to sanction him for and increased the sanction 50 percent. And that is absolutely going to send a chill down the spine of any litigant contemplating coming to this Court for relief. Well, look what can happen. So that's the last point I have. Short of any questions, I'm happy to submit. Thank you, counsel. Thank you, Your Honors. The case is argued. It will be submitted.
judges: Reinhardt, Thomas, Christen